IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| J.B. B/N/F KIMBERLY BEASON | § | |
| AND SCOTT BEASON, *individually*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | C.A. No. 4:19-cv-210 |
| | § | |
| KLEIN INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| *Defendant*. | § | |

## <u>KLEIN INDEPENDENT SCHOOL DISTRICT'S</u>
## <u>MOTION FOR SUMMARY JUDGMENT</u>

Klein Independent School District (KISD or the District) moves for summary judgment

as follows:

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................... iii

NATURE AND STAGE OF PROCEEDINGS ...................................................................1

STATEMENT OF THE ISSUES ........................................................................................1

STANDARD OF REVIEW .................................................................................................1

FACTUAL BACKGROUND ..............................................................................................2

SUMMARY OF THE ARGUMENT ..................................................................................8

ARGUMENT & AUTHORITIES ......................................................................................8

    A. Plaintiffs' Title IX claim fails as a matter of law ................................................8

        1. Plaintiffs have no evidence that J.B. was harassed or bullied because of her gender ....................................................................................................10

        2. J.B. was not subjected to severe or pervasive harassment .....................................14

        3. Beason cannot demonstrate deliberate indifference to the alleged harassment .............................................................................................16

    B. Plaintiffs' claim for an alleged violation of Title IX regulations is fatally flawed .............................................................................................................19

CONCLUSION AND PRAYER ........................................................................................20

CERTIFICATE OF SERVICE ..........................................................................................21

APPENDIX................................................................................................................ attached

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Burwell v. Pekin Cmty. High Sch. Dist. 303*,
    213 F. Supp. 2d 917 (C.D. Ill. 2002)..........................................................................12

*Carmichael v. Galbraith*,
    574 F. App'x 286 (5th Cir. 2014) ...............................................................11, 13, 14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .......................................................................................................1

*Chavez v. Richardson Indep. Sch. Dist.*,
    2017 WL 3620388 (N.D. Tex. Aug. 23, 2017) .........................................................13

*Davis v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999) ..............................................................................................Passim

*Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*,
    153 F.3d 211 (5th Cir. 1998)..............................................................................12, 19

*Doe v. Torrington Bd. of Educ.*,
    179 F. Supp. 3d. 179 (D. Conn. 2016) ......................................................................12

*Estate of Carmichael ex rel. Carmichael v. Galbraith*,
    2012 WL 13568 (N.D. Tex. Jan. 4, 2012)................................................................13

*Estate of Lance v. Lewisville Indep. Sch. Dist.*,
    743 F.3d 982 (5th Cir. 2014)..............................................................................17, 18

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998) ....................................................................................................20

*GP v. Lee County School Board*,
    737 F. App'x 910 (11th Cir. June 5, 2018) ...............................................................15

*Hawkins v. Sarasota Cnty. Sch. Bd.*,
    322 F.3d 1279 (11th Cir. 2003).................................................................................15

*HB v. Monroe Woodbury Cent. Sch. Dist.*,
    2012 WL 4477552 (S.D. N.Y. Sept. 27, 2012)........................................................14

*I.F. v. Lewisville Indep. Sch. Dist.*,
    915 F.3d 360 (5th Cir. 2019).............................................................................14, 19

iii

*J.A. v. Corpus Christi ISD*,
    2018 WL 4469861 (S.D. Tex. Sept. 18, 2018) ..........................................................20

*Oncale v. Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998) ..........................................................................................14

*Patenaude v. Salmon River Cent. Sch. Dist.*,
    2005 WL 6152380 (N.D.N.Y. Feb. 16, 2005) ..........................................................11

*Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*,
    678 F. Supp. 2d 1008 (E.D. Cal. 2009) ..................................................................15

*S.S. v. Eastern Kentucky University*,
    532 F.3d 445 (6th Cir. 2008) ..............................................................................17

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*,
    647 F.3d 156 (5th Cir. 2011) ....................................................................... Passim

## DOCKETED CASES

*J.B. v. Klein Indep. Sch. Dist.*,
    C.A. No. 4:18-cv-0244 ........................................................................................1

*Jade B. b/n/f Kimberly B. v. Klein Indep. Sch. Dist.*,
    TEA Docket No. 014-SE-0917 (Sept. 26, 2017) ..........................................................2

## FEDERAL STATUTES

20 U.S.C. § 1232g..........................................................................................................2

20 U.S.C. § 1681(a) ........................................................................................................8

20 U.S.C. § 1682............................................................................................................20

iv

## NATURE AND STAGE OF PROCEEDINGS

This lawsuit is brought under Title IX of the Education Amendments Act of 1972 (Title IX) arising from J.B.'s attendance in the District from 2011-2017. Plaintiffs filed this lawsuit on January 26, 2018, and it was assigned to the Honorable Judge Gray Miller. *See J.B. v. Klein Indep. Sch. Dist.*, C.A. No. 4:18-cv-0244. KISD moved to dismiss the complaint, and Plaintiffs requested leave to file an amended complaint. The court granted Plaintiffs leave, but they never filed an amended complaint. The court dismissed the case for want of prosecution.

Plaintiffs refiled this lawsuit and it was assigned to this Court. They again pursue relief under Title IX. As explained below, there is not a genuine issue of material fact and KISD is entitled to summary judgment.

## STATEMENT OF THE ISSUES

- Whether Plaintiffs can demonstrate a genuine issue of material fact with respect to her Title IX claim where J.B. was not subjected to severe or pervasive harassment based on her gender;

- Whether Plaintiffs can demonstrate that KISD's responses to her allegations were clearly unreasonable as a matter of law; and

- Whether there is a private right of action to enforce the Title IX regulations.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to demonstrate the existence of an element of the party's case on which the party bears the burden. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## FACTUAL BACKGROUND

J.B. is now a 16-year-old, former student of Klein ISD. *See* Exhibit A, Deposition of J.B., at 4:25-5:1.[1] While a student in the District, J.B. attended Northampton Elementary School from kindergarten through the fifth grade. *Id.* at 5:19-22. She matriculated to Hildebrandt Intermediate School for the sixth grade, where she attended until her withdrawal from the District in the eighth grade. *See* Affidavit of Lauren Marti, attached as Exhibit B, at ¶ 2.

When J.B. was in the fourth grade during the 2012-2013 school year, her mother, Kimberly Beason, first reported on April 13, 2013, that J.B. was being bullied by other students. *See* Exhibit C, Deposition of Kimberly Beason, at 23:23:14-16; *see also* Exhibit D, Petitioners' Response to Respondent's Motion for Summary Judgment, at p. 2.[2] In her report, Beason stated that R.C. (female), C.E. (male), and T.A. (male) were bullying J.B. *See* Bullying/Harassment Investigation Report, attached as Exhibit B-3; *see also* Exh. A at 112:2-3.

School officials met with Beason on April 17, 2013 to discuss her allegations. *See* Exh. B-3 at 2. Beason complained that R.C., C.E., T.A., and Z.C.[3] (male) were calling J.B. names such as "midget" and "cry baby." *Id.* at 3; *see also* Exh. A at 23:19-24, 112:2-3. C.E. called J.B. fat and Beason had to force her to eat because of it. Exh. B-3 at 4, Exh. C at 25:19-26:4.

---

[1] KISD filed exhibits to this motion for summary judgment under seal to maintain J.B.'s confidentiality under the Family Educational Rights and Privacy Act. *See* 20 U.S.C. § 1232g.

[2] Prior to filing the instant lawsuit, Beason filed a due process complaint before a hearing examiner appointed by the Texas Education Agency and asserted, amongst other things, a claim under Title IX. *See J.B. b/n/f Kimberly B. v. Klein Indep. Sch. Dist.*, TEA Docket No. 014-SE-0917 (Sept. 26, 2017). Plaintiffs dismissed the due process proceeding and brought this lawsuit in federal court.

[3] This student is referred to in this lawsuit as Z.C., which is an abbreviation for his name of record, A.C. *See* Exh. A at 9:9-11. KISD records refer to him as both Z.C. and A.C.

Beason further reported that, if J.B. cried, the students would make "baby cry faces" at her. Exh. B-3 at 3. According to Beason, R.C. told other students that J.B. was "weird," and the students took turns telling others not to talk to J.B. because she was a crybaby. *Id.*

With this information about the name calling in hand, J.B.'s teacher, Elizabeth Mickelson, talked to the students in class about bullying on April 16, 2013. *See id.* at 4. Additionally, Counselor Kristy Johnson called C.E. and T.A. in and spoke with them. *Id.* The students told Johnson that J.B. was being made fun of and called a crybaby. *Id.* J.B. was also interviewed and stated that C.E. and T.A. were "being mean," and whenever C.E., T.A., and Z.C. would come toward her, she would go and hide. *See id.* at 5-6. When Mickelson was questioned, she stated that J.B. called Reagan a diva and warned other students that she (J.B.) would tell Beason in order to get Reagan in trouble. *Id.* at 5.

Beason followed up and informed J.B.'s teacher that she wanted to make J.B. "stronger and not so sensitive" and described her as "emotional child, über sensitive" and "a book nerd." *See* Exhibit E, email correspondence from Kimberly Beason dated April 17, 2013. The administration determined that there was a "back and forth thing" between J.B. and the other students and concluded that the allegations were not based on sex or sexual orientation. Exh. B-3 at 1.

At the end of J.B.'s fourth grade year, a friend of Beason's allegedly said that she walked by J.B. during lunch and saw students making fun of J.B. Exh. C at 24:8-15. Apparently after J.B. began to cry, the students "high fived each other." *Id.* According to Beason, J.B.'s father then asked to have J.B. separated from C.E. and placed in a different class than him for the next year. Exh. B at 24:17-24.

3

The District acceded to that request. When J.B. entered the fifth grade, the District placed her in an ESL class and separated her from the alleged perpetrators. Exh. A at 33:22-34:7; Exh. C at 24:22-25:5. J.B. claims that, although she did not have problems in class, she had run-ins with C.E. at lunch and recess. Exh. A at 35:5-22. J.B. charges that C.E. threw her belongings away at lunch and shoved her, isolated her, and called her names at recess. *Id.*

J.B.'s fifth grade teacher, Sherry Schweitzer, implemented measures to keep C.E. away from J.B. Dkt. 1 at ¶ 62. Beason was glad that Schweitzer was looking out for J.B. and "tried really hard" to do so. Exh. C at 28:7-11. When Beason reported that C.E. kicked J.B. on the way out of school, Schweitzer let J.B. know that she was there for her, informed the P.E. teachers and walked her out first during dismissal. *See* Exh. F. Beason thanked Schweitzer for being "so much more than a teacher" and "a great mentor to [J.B.]." *Id.*

J.B. attended sixth grade at Hildebrandt Intermediate. Exh. A at 38:17-22. From the beginning of J.B.'s sixth grade year, safety measures were put in place for her. *See* Exh. C at 34:6-8. Marcy Wilson, Hildebrandt school counselor, paid special attention to J.B. and informed Beason that she would "look out" for J.B. *Id.* Assistant Principal Lauren Marti was also proactive in monitoring J.B. during passing periods and during lunch. Exh. B at ¶ 3. Additionally, school staff made sure that J.B. did not have any classes with C.E. or Z.C. *Id.* at 34:4-9, 39:12-40:2; Exh. A at 33:22-34:7. J.B. did share one class with T.A., but, by that point, he had stopped allegedly bothering her. Exh. A at 39:21-23.

Despite protections being in place, J.B. alleges that she continued to have issues with C.E. and Z.C. According to J.B., C.E. and Z.C. took her food at lunch and threw it in the garbage approximately five times. *Id.* at 40:13-41:7. Although J.B. admittedly never witnessed C.E. or Z.C. throw away her food, she attributes it to them because C.E. allegedly smirked at

4

her and gave her the middle finger when she went looking for her lunch. *Id*. at 41:1-12. Other times when J.B.'s food was thrown in the trash, she placed blame on C.E. because he "would constantly [be] in a different place than he was before, and he and his friends would high five each other when they saw [her] panicking." *Id*. at 42:1-8. On another occasion, J.B. allegedly reported to the school principals that "someone" threw her books in the trash, but she "never had any evidence it was [C.E.] who did it." *Id*. at 42:13-43:21.

According to J.B., there were two or three times when sexual innuendos were directed at her by a single unknown, unnamed male student. Exh. A at 74:7-14. J.B. claims that the student propositioned her for sex by asking her in the lunch room to "give him some." *Id*. at 74:23-75:5. She inferred it to be a request for sex because of nothing more than his "tone." *Id*. at 75:6-10.

Plaintiffs allege that from sixth through eighth grade, C.E., Z.C. and their unknown, unnamed friends made comments to J.B. such as "nice butt," "nice tits," and "wanna have sex?". Dkt. 1 at ¶ 68. J.B. claims she reported these incidents, but it is unclear to whom and when. Importantly, J.B. acknowledges that Z.C. stopped bothering her "[f]or the most part." Exh. A at 47:24-25.

Plaintiffs' chief complaints are about C.E. And while C.E. allegedly made comments to J.B., she says they were "small" and "[h]e didn't do it a lot." *Id*. at 122:1-16. Plaintiffs also allege that C.E. "touched [J.B.] on her buttocks from behind in the hallway." Dkt. 1 at ¶ 77. Contrary to the Complaint, however, C.E. in fact did not grab her butt and never touched her sexually. Exh. A at 60:15-18, 76:18-25, 124:17-18. According to J.B., she does not know who touched her butt because she "bolted" when it happened *Id*. at 76:18-25.

5

J.B. went to the seventh grade for the 2015-2016 school year. Near the end of the fall 2015 semester, C.E. allegedly told J.B. during lunch that her dad left her mother because J.B. was "so ugly" and allegedly called her "freak," "fat," "ugly," "bitch," and "slut." Dkt. 1 at ¶ 72. School officials responded by relocating J.B. in the lunch area. *Id.* The solution was effective, as there are no additional allegations that male students were giving J.B. problems for the rest of her seventh-grade year. *See id. generally.*

J.B. did, however, have problems with female students that year. J.B. joined the cheer team at the end of her seventh-grade year. Exh. A at 65:14-17; *see also* Exhibit G, affidavit of Tina James, at ¶ 3. But her time on the cheer team was short-lived and she quit after only three months on the team after she was given demerits for missing events or school. *Id.* at 65:18-66:21. Also fueling her departure, J.B. thought the cheer team was stressful because "one of the girls on the team was not a nice person, to say the least, but they never punished her for it." *Id.* at 66:24-67:4.

J.B. did not make it easy to get along with her. For example, J.B. called another cheerleader an "idiot," and when another student informed J.B. that her comment was rude, J.B. became upset and responded to that student by telling her that she (J.B.) felt bullied and was going to tell her mother, Beason, to get the female student in trouble. Exh. G at ¶ 3. On other occasions, J.B. bragged to the other students about how much smarter she was and having a higher IQ than all of them. *Id.*; Exh. A at 98:19-99:1.

J.B.'s time on the cheer team officially ended after Beason disagreed with the coaches' administration of demerits that J.B. received. Exh. G at ¶ 4. J.B. received 15 demerits for missing football games and not following rules at cheer camp. *Id.* J.B. cheered in fewer than four games and was in danger of being removed from the team for accruing the maximum

number of demerits a cheerleader could receive. *Id.* at ¶ 4; Exh. A at 67:5-11. Beason became very vocal about her disagreement with the demerits and raised the issue with the coaches. Exh. G at ¶ 5. Beason pulled J.B. from cheer on October 28, 2016 because she thought the cheer coaches were "unprofessional." *Id.*; *see also* email correspondence from Kimberly Beason, dated December 6, 2016, attached as Exhibit B-1, at 1; Exh. G at ¶ 5.

During J.B.'s eighth grade year, Beason wrote Marti an email on December 5, 2016 informing her that J.B. would not be at school. *See id.* According to Beason, J.B. was upset because someone pulled her hair the previous day. *Id.* She also allegedly heard someone, who she believed to be a girl, call her a "freak" and laugh. *Id.* Beason said in her email that she did not think it was a "big deal." *Id.* But Beason recapped for Marti her perception that J.B. was bullied from fourth to sixth grade. *Id.* According to Beason, "[i]t started again a little in seventh and was ok until lately." *Id.* Beason let Marti know that "Wilson was amazing when [J.B.] was [i]n 6th" and knew J.B.'s situation. *Id.*

Beason asked Marti to view school video cameras to see who pulled J.B.'s hair. *Id.* Marti responded that she would "absolutely investigate the situation" and asked for J.B. to come to her office immediately when she arrived to school. *Id.* Marti reviewed the cameras and could not determine who pulled J.B.'s hair. Exh. C at 58:6-21; Exh. B at ¶ 5. Beason followed up with another email to Marti that evening thanking her for meeting that day and stated that she was "at peace." *See* Email correspondence with Kimberly Beason, dated December 7, 2016, attached as Exhibit B-2. Marti responded that she believed that progress was being made and, of course, Beason did not disagree. *See id.*

7

J.B.'s last day on campus was February 26, 2017. Dkt. 1 at ¶ 79. This lawsuit followed alleging that the District violated Title IX by subjecting J.B. to sexual harassment and bullying on the basis of her gender.

## SUMMARY OF THE ARGUMENT

The gravamen of Plaintiffs' allegations concern schoolyard banter and are not actionable under Title IX. J.B. admitted in her deposition that the allegations in the Complaint that students called her a slut and that C.E. grabbed her butt did not occur. Additionally, Plaintiffs have no evidence to meet the high burden of showing that the District's responses were "clearly unreasonable" where the evidence conclusively shows that the District reacted and responded to Plaintiffs' concerns.

The claim against KISD for allegedly violating the Title IX implementing regulations is barred by well-settled Supreme Court precedent. Additionally, Kimberly Beason and Scott Beason lack standing to assert claims against KISD in their individual capacities. Summary judgment is appropriate as a matter of law.

## ARGUMENT & AUTHORITIES

### A.  *Plaintiffs' Title IX claim fails as a matter of law.*

Title IX provides that "[n]o person in the United States shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…." 20 U.S.C. § 1681(a) (emphasis added). To establish liability, Beason must demonstrate that (1) the District had actual knowledge of harassment, (2) the harasser was under the school's control, (3) the harassment was based on J.B.'s gender, (4) the harassment was so "severe," "pervasive," and "widespread" that it had the "systemic effect of denying the victim equal

8

access to an educational program or activity," and (5) the school was deliberately indifferent to the harassment. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652-54 (1999); *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011).

In preparation for this litigation, J.B. prepared a letter detailing her complaints about KISD from her point of view. *See* Exh. A at 62:11-22. Her letter is illuminating here because it highlights the heart of the issue—whether or not she experienced severe or pervasive harassment or bullying because she is a female. J.B. wrote:

> *My name is Jade Beason. I am fourteen years old and a freshman in high school. I have a difficult time talking to people so I thought writing my story would be a better way to tell you my story. I was a student at KISD from Kindergarten to eighth grade.*
>
> *I was in third grade when a boy named [C.E.] and his friends decided they didn't like me and started to bully me. They called me ugly, short and told kids on the playground not to play with me. He pushed me off the monkey bars and slammed my head against a pole on the way to PE class. My parents told me to tell the teacher and that she would make him stop.  They also said try and be nice to him. He must be having a hard time at home if he acted this way. I did all of those things and nothing worked. The teacher didn't help and no matter how nice I was he just continued his behavior.*
>
> *In fourth grade it was worse. He and his two friends would call me a fat, stupid, ugly, b word almost daily. I had two friends in our class and he would bully them too. Eventually one of them went over to his side. He would tell her to call me names. Then she would come to me and apologize and wanted to be friends again. This happened over and over as the year went on. One of my friends was a boy[,] he lives on my street and we have known each other since we were three. [C.E.] and his friends would say he was only my friend because we had sex and that we were doing it. I had no idea what that meant, I went home and asked my mom what he thought we were doing and why he said that. Eventually even that friend stayed away from me. I cried almost every day. When the boys saw me start to cry, they would high five each other and laugh. I didn't want to eat. I thought if I lost weight maybe they would stop calling me fat. I was communicating all of this to my parents and they were talking to the principals, both of my teachers and the school counselor. I went in and spoke with the counselor myself on more than one occasion. Nothing helped, no one at the school helped. On the last day of school my father told the principal that he wanted [C.E.] nowhere near me in fifth grade.*

*In fifth grade I was in Mrs[.] Schweitzer's class. Most of the kids in that class were ESL. I am a blonde hair blued girl so I stuck out like a sore thumb in that class. I was very different and had a hard time making friends. The teacher tried hard to keep [C.E.] away from me, but he still managed to find me on the playground, lunch room or hallway. Eventually I decided to find a place near the teachers at recess to sit so I felt safe and that he couldn't get to me. One day as I was walking out of school to meet my dad he came up behind me and pushed me down. I asked him why he hated me, why was he calling me a fat, stupid, b-word all the time. He said it wasn't just me that he thought were those things, he thought Me (sic), my mom and all women  were. My knee was bleeding and when I got to the car my dad walked in and spoke to the principal. My parents called Klein police and we told them what had been happening. When I went back to school nothing had changed. They still came after me anytime they could. In my head I was a fat, stupid, ugly bi\*\*\* and no one at the school cared what they did. They were letting it happen and did nothing to stop it,*

*When I started middle school I was told by the counselor that it was a big school and I would not really see him.  They were wrong.  He would yell names out at me as I walked down the halls, at lunch and tried to push me down the stairs more than once. He was not in my classes, but he still managed to find me. I was called an ugly fat freak, a weirdo, big boobs, no rear (but that is not the word he used) a tattle tale, a fat bi\*\*\* (he like (sic) that one) and any demeaning names and descriptions than (sic) I care to remember. They were always about my weight, my looks, my body, whatever he could say to hurt me. I tried out for school cheer, my parents thought it would help my confidence.  I made the team, but he showed up at games and sat behind me if I was in the bleachers or right in front of where we were cheering if a game was going on.  He would make faces or lewd gestures with his hands or whisper mean or inappropriate things if he was close enough. Three counselors, three principals and my cheer sponsors knew our history, but none of them kept him way. In eighth grade I started to have pains in my stomach.  This made it hard to go to school. My grades dropped and I was sick a lot. After a lot of tests we found out it was related to stress and anxiety. I did not feel safe at Hildebrandt. I had no friends and was treated like a leper . . . .*

*See* Letter from J.B., attached as Exhibit H.

1.  <u>Plaintiffs have no evidence that J.B. was harassed or bullied because of her gender.</u>

The Fifth Circuit holds that a Title IX claim *must* be based on one's gender. *See Sanches*, 647 F.3d at 165 ("The offensive behavior, however, must still be based on sex, per the words of title IX, and 'not merely tinged with offensive sexual connotations.' "). "Damages

10

are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender." *Davis*, 526 U.S. at 652. "In other words, was Plaintiff being harassed because of her gender or for some other reason?" *Patenaude v. Salmon River Cent. Sch. Dist.*, 2005 WL 6152380, at *5 (N.D.N.Y. Feb. 16, 2005).

The "constellation of surrounding circumstances" is important to determine the nature of the alleged harassment. *See Carmichael v. Galbraith*, 574 F. App'x 286, 290 (5th Cir. 2014) (per curiam) (citing *Davis*, 526 U.S. at 651). There is no evidence to support the allegations that students behaved inappropriately toward J.B. *because of her sex*. According to Beason's Complaint, by the sixth grade, J.B. was no longer called by her name but was referred to "solely" as "derogatory terms such as 'slut.' " Dkt.1 at ¶¶ 66-67. Among the myriad of allegations, at least one aspect is demonstrably false, as J.B. admitted that she was never called a slut. *See* Exh. A at 64:21-22, 72:9-10. The remainder of the name calling does not advance this claim.

When asked how C.E. bothered her in the hallways at school, J.B. testified that: "Well, for one, he would constantly berate and insult [her]. For example, he would call [her] a fat, stupid bitch, and that [she] needed to do something good for once in [her] life . . . ." Exh. A at 44:5-14. J.B. testified that students talked behind her back and she would overhear them call her a "freak[] or nerd," and she was sometimes allegedly called "a waste of space, worthless, an idiot, a fat ass." *Id.* at 13:10-12, 24:13-25:2. Moreover, Beason reported to Marti that the "calling her a freak thing started after she quit cheer," and J.B. believed a female student was

responsible. Exh. B-1. While same-sex harassment is a viable claim under Title IX,[4] Plaintiffs

do not allege that female students violated J.B.'s Title IX rights.

Even assuming, *arguendo*, that students did call J.B. a slut, bitch, freak, fat, or ugly, the

Supreme Court is very clear: "Damages are not available for simple acts of teasing and name-

calling among school children, however, even where these comment target differences in

gender." *Davis*, 526 U.S. at 652. Courts recognize that there is "unpleasant conflict that takes

place every day in high schools, [but] is not the proper stuff of a federal harassment claim."

*Sanches*, 647 F.3d at 165 (alteration added); *see also Davis*, 526 U.S. at 651-52 (cautioning

courts that "[i]t is not enough to show . . . that a student has been 'teased' . . . or 'called …

offensive names.").

Cases that have followed the seminal decision in *Davis* foreclose Beason's ability to

set forth a colorable Title IX claim based on assertions that students called J.B. names. In

*Sanches*, the Fifth Circuit held that a student calling another student a "ho" with a hickey on

her breast does not constitute harassment based on sex. 647 F.3d at 165. And other federal

courts agree that Title IX requires more—use of gendered or even sexual language, by itself,

does not constitute discrimination on the basis of gender. *See, e.g., Doe v. Torrington Bd. of

Educ.*, 179 F. Supp. 3d. 179, 197 (D. Conn. 2016) (finding "pussy," "bitch," and "baby"

insufficient to show harassment based on gender); *Burwell v. Pekin Cmty. High Sch. Dist. 303*,

213 F. Supp. 2d 917, 931 (C.D. Ill. 2002) ("the use of terms such as 'bitch,' 'whore' and 'slut'

at school are not necessarily based upon gender bias but may be based on personal animosity

unrelated to gender").

---

[4] *See Sanches*, 647 F.3d at 165 ("Same-sex sexual harassment is actionable under title IX.") (citing *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219. (5th Cir. 1998).

In essence, nothing in the record demonstrates how J.B. being a female is even tangentially related to these allegations.

It necessarily follows that Beason's allegations of general bullying, *wholly* unrelated to J.B.'s gender, fare no better. Title IX does not provide relief for Beason's complaints that students made J.B. cry and said that her dad left her and her mother because she was ugly. *See Chavez v. Richardson Indep. Sch. Dist.*, 2017 WL 3620388, at *8 (N.D. Tex. Aug. 23, 2017) ("allegations of general bullying, teasing, or name-calling will not do." "Calling someone ugly and stupid is not gender-related harassment.") (citing *Davis*, 526 U.S. at 652).

Plaintiffs' allegations that C.E. pushed, hit, and shoved J.B. when they were in elementary and intermediate school do not advance their position. Allegations of physical contact must also be supported with underlying accusations that the conduct was based on the plaintiff's gender.

In *Estate of Carmichael ex rel. Carmichael v. Galbraith*, the district court granted the defendants' motion to dismiss the plaintiff's Title IX claim alleging the student was put upside down in school dumpsters, pushed down on almost a daily basis, placed upside down in a toilet bowl, bumped and hit almost every day, and was stripped nude, tied up, and placed in a trash can and called "fag, queer, homo and douche." 2012 WL 13568, at *7 (N.D. Tex. Jan. 4, 2012). The Fifth Circuit reversed on a "narrow basis." *Carmichael v. Galbraith*, 574 F. App'x 286, 290 (5th Cir. 2014). Agreeing with the district court's analysis in most respects, the Fifth Circuit noted, however, that the allegations of sexual harassment—stripping the student naked and tying him up, in addition to removing his underwear on numerous occasions—were sufficient to state a claim for relief. *Id*. at 290-91. The Fifth Circuit did not disturb the

remainder of the district court's opinion analyzing the allegations of physical contact not motivated by gender. *See id*.

Beason is unable to articulate how C.E. allegedly trying to push J.B. down stairs, pulling her off monkey bars, hitting her head against a wall, or sitting in front of her at games was because she is a female. During her deposition, J.B. testified that C.E. beat up a male student and C.E. also befriended her female, former friend, R.C. Exh. A at 17:12-18:4. There is nothing to permit an inference that C.E. allegedly harassed J.B. because of her gender and this claim should be dismissed. *See HB v. Monroe Woodbury Cent. Sch. Dist.*, 2012 WL 4477552, at *17 (S.D. N.Y. Sept. 27, 2012) (finding that student who "was physically assaulted in a non-gender-specific way" did not plausibly plead that the alleged harassment was "because of her gender").

2. J.B. was not subjected to severe or pervasive harassment.

Harassment under Title IX must be "so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit." *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 368 (5th Cir. 2019). To evaluate Title IX claims premised on student-on-student gender harassment, courts must consider the "constellation of surrounding circumstances, expectations, and relationships." *Davis*, 536 U.S. at 631 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79-81 (1998)). The *amici* in *Davis* aptly noted:

> The real world of school discipline is a rough-and-tumble place where students practice newly learned vulgarities, erupt with anger, tease and embarrass each other, share offensive notes, flirt, push and shove in the halls, grab and offend. In the school setting, students often engage in insults, teasing, shoving, and gender-specific conduct that is upsetting to the student subjected to it." *Id*.

14

*Davis*, 526 U.S. at 673 (Kennedy, J., dissenting) (citing Brief for National School Boards Association et al. at 10-11).

At any rate, "[d]amages are not available for simple acts of teasing and mere name-calling among school children even where these comments target differences in gender." *Id.* at 653.

It is clear that the bulk of Plaintiffs' allegations, while they may have been maddening to J.B., are not the type of complaints that Title IX is geared at uprooting. *Cf. GP v. Lee County School Board*, 737 F. App'x 910 (11th Cir. June 5, 2018) (affirming dismissal of Title IX claim against a school district and noting behavior not severe or pervasive where a male student pushed a female student, pulled her hair, knocked her books out of her hand, shook her chair to try to make her fall, and hit her in the face with a notebook, which amounted to battery); and *Hawkins v. Sarasota Cnty. Sch. Bd.*, 322 F.3d 1279 (11th Cir. 2003) (affirming summary judgment where male student would gesture to his genitals and tell three female students to "suck it"; "meet [him] in the bed in two seconds"; tell students he wanted to suck the milk from their breasts; tell female students he wanted them to "suck the juice from his penis" and that he wanted to have sex with them; touch students on their chests and try to kiss them; and try to look under a student's skirt over several months was not so severe that it had the systemic effect of denying the female students an education) *with Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008 (E.D. Cal. 2009) (finding severe harassment where male student was verbally, physically and sexually assaulted and an air pump was shoved up his rectum and turned on; student was sexually assaulted in the shower; and a student slapped him in the face with his penis).

Importantly, the alleged harassers here were elementary and middle school students and the same grade level as J.B. Embracing the Supreme Court's admonition in *Davis* that courts must view the "constellation of circumstances," including the "ages of the harasser and the victim," coupled with *Sanches* instructing that there is unpleasant conflict in *high schools* every day, it is clear that grade school children of the same cohort teasing and name calling is not severe and pervasive harassment that Title IX is intended to root out. *Davis*, 526 U.S. at 651; *Sanches*, 647 F.3d at 165. Because of Beason's clear inability to allege a claim that rests within Title IX's purview, KISD is entitled to dismissal. *See, e.g.*, *Sanches*, 647 F.3d at 170.

3.  <u>Beason cannot demonstrate deliberate indifference to the alleged harassment.</u>

"For a school to be liable under title IX, its response, or lack thereof, to the harassment must be clearly unreasonable in light of the known circumstances. That is a high bar, and neither negligence nor mere unreasonableness is enough." *Sanches*, 647 F.3d at 167-68 (internal citations, quotations and alterations omitted); *see also Davis*, 526 U.S. at 642, 648. "In an appropriate case, there is no reason why courts, on a motion . . . for summary judgment . . . could not identify a response as not 'clearly unreasonable' as a matter of law." *Davis*, 526 U.S. at 649.

KISD's responses were not clearly unreasonable and Plaintiffs cannot show that the District was deliberately indifferent to allegations of bullying or harassment. The evidence demonstrates that the District conducted an investigation when Beason reported that J.B. was being bullied by students during the fourth grade. *See* Exh. B-3. And like Beason reported, it was a "back and forth thing" between the students, not gender-based harassment or bullying. *Id*. Those students were instructed to leave J.B. alone. Exh. B-3 at 1. When J.B. got to the fifth grade, the administration made sure that she was not in classes with C.E., T.A., and Z.C. Exh.

16

A at 33:22-24, Exh. B at 24:3-7. Her sixth grade year, J.B. was monitored by Wilson and Marti who were on the lookout for any problems with J.B. and the alleged harassers. Exh. B at ¶ 3. According to Beason, students bothered J.B. "a little in seventh and [it] was ok until lately," when she was in the eighth grade. *See* Exh. B-1 (alteration added). When J.B. complained in the eighth grade that someone pulled her hair, Marti investigated and reviewed the cameras but could not determine who was the perpetrator. Exh. B at ¶ 4. There were no other reports of bullying or harassment received by KISD (other than Plaintiffs' allegations that C.E. grabbed J.B.'s butt in February 2017, *see* Dkt. 1 at ¶ 77, but J.B. admitted that it never occurred. Exh. A at 76:18-25, 124:17-18).

The District's responses are sufficient to avoid a finding of deliberate indifference. In *S.S. v. Eastern Kentucky University*, 532 F.3d 445 (6th Cir. 2008), students harassed another student with disabilities – called him names, pushed and tackled him the hallway and lunchroom, threw urine soaked paper towels and bleach at him, slammed his head into a glass, and grabbed his genitals.[5] The school interviewed students, instructed them to not taunt, spoke with students about the name-calling, added extra monitoring, involved the police for an assault, and at times separated the students involved. *Id*. at 455. The Sixth Circuit concluded that the school was not deliberately indifferent. *Id*.

In *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982 (5th Cir. 2014), Montana, a disabled student, hanged himself in a school restroom after allegedly being bullied. Montana's estate sued the school district, in part, for peer on peer harassment that Montana was subjected to because of his disabilities. *Id*. at 987. Applying Title IX's analysis, the court

---

[5] *S.S.* was a lawsuit brought under the Americans with Disabilities Act, Rehabilitation Act of 1973, the United States Constitution and Kentucky law.

concluded that the evidence demonstrated that the school district was not deliberately indifferent for three reasons: first, the two documented incidents with Montana and other students (a shoving match and Montana pulled a knife at school) were investigated and punishment issued; second, "in response to allegations that Montana was bullied beyond the two documented instances," the evidence showed a pattern of the school district responding to other incidents involving Montana; and third, the school district had appropriate bullying and harassment policies. *Id*. at 997-99.

Regarding the pattern of responses, the Fifth Circuit noted that Montana's teacher was alerted to document his behavior and moods; Montana was sent to the office for pushing another student, and the Vice Principal met with him and contacted his parents; Montana kicked three students and was removed from the situation and given "an opportunity to cool down"; when Montana struggled to get along with other disabled students, the teacher enforced their separation and did not allow them to be in small groups together; and a student testified that when Montana was physically bullied, the teacher would tell the person who hit Montana that he was going to get in big trouble. *Id*. at 998.

Here, J.B. complains that in the seventh grade, she was harassed and became so upset that she loudly screamed at them to leave her alone.[6] Dkt. 1 at ¶ 70. All students involved were sent to Marti's office. *Id*. On another occasion, J.B. was allegedly called names and threw a napkin at C.E. in response. *Id*. at ¶ 72.  J.B. was separated from the students and made to sit in a different location for lunch. *See id*. Moreover, when the C.E. and T.A. did misbehave, they were disciplined. Relevant here, T.A. was given detention in the third grade when a teacher

---

[6] KISD assumes, *arguendo*, that these incidents occurred. KISD reserves the right to challenge these "facts" at subsequent stages of this litigation.

heard him call another student a "slut." *See* Disciplinary Record Excerpt for T.A., attached as Exhibit B-4. In the eighth grade, T.A. made inappropriate, vulgar comments and body movements to female students. *Id*. He was given in-school-suspension. *Id*. When C.E. was in the seventh grade, the District issued him detention for making fun of a female student for being on the football team. *See* Disciplinary Record Excerpt for C.E., attached as Exhibit B-5. Furthermore, KISD has school board policies that prohibit bullying and harassment. *See* KISD Board Policies FFH and FFI, attached as Exhibit I. With no evidence whatsoever, Plaintiffs contend that the District buried their collective heads in the sand and refused to act. That is demonstrably false, as there is a pattern of action and responsiveness to wrongdoing.

Like the defendant school district's response to "allegations that Montana was bullied beyond the two documented instances" in *Estate of Lance*, KISD investigated the "documented" complaints,[7] demonstrated a pattern of responding—as opposed to avoiding the issues—and maintained policies prohibiting bullying and harassment.

The evidence demonstrates that KISD was attentive to Plaintiffs' allegations and, to the extent this lawsuit hinges on the efficacy of the responses, "[a]ctions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference …." *I.F.*, 915 F.3d at 369 (quoting *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998)). KISD is entitled to summary judgment.

**B.    *Plaintiffs' claim for an alleged violation of Title IX regulations is fatally flawed.***

Plaintiffs pursue a "private cause of action against the School District for their (sic) violation of the rules and regulations promulgated pursuant to Title IX." Dkt. 1 at ¶ 114. It is

---

[7] KISD does not suggest that there were "undocumented" incidents or reports.

well-settled that that the Supreme Court "ha[s] never held, however, that the implied right of action under Title IX allows recovery in damages for violation of [Title IX] administrative requirements." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998). Enforcement authority against the District rests exclusively with the Department of Education. 20 U.S.C. § 1682; *see also J.A. v. Corpus Christi ISD*, 2018 WL 4469861, at *8 (S.D. Tex. Sept. 18, 2018) (striking Title IX regulations-based claim).

<u>**CONCLUSION AND PRAYER**</u>

Defendant Klein Independent School District requests that the Court grant its Motion for Summary Judgment, dismiss Plaintiffs' claims with prejudice, and award any and all other relief to which the District may be justly entitled.

Respectfully submitted,

ROGERS, MORRIS, & GROVER, L.L.P.

CLAY T. GROVER
State Bar No. 08550280
Fed. I.D. No. 15064
cgrover@rmgllp.com
JAMIE L. HOUSTON
State Bar No. 24097847
Federal I.D. 2780689
jhouston@rmgllp.com
5718 Westheimer, Suite 1200
Houston, Texas 77057
Telephone:   713/960-6000
Facsimile:    713/960-6025

ATTORNEYS FOR DEFENDANT
KLEIN INDEPENDENT
SCHOOL DISTRICT

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 8, 2019, a true and correct copy of the foregoing was served on counsel of record *via* ECF as follows:

Martin Cirkiel
Holly Terrell
Cirkiel & Associates, P.C.
1901 E. Palm Valley Blvd.
Round Rock, TX 78664

_____
Counsel for KISD

21