United States District Court
Southern District of Texas
**ENTERED**
February 18, 2020
David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| J.B. B/N/F KIMBERLY BEASON AND SCOTT BEASON, INDIVIDUALLY, *Plaintiffs*, | §<br>§<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. 4:19-CV-0210 |
| KLEIN INDEPENDENT SCHOOL DISTRICT, *Defendant*. | §<br>§<br>§<br>§ | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

This Title IX case is before the Court on Defendant's Motion for Summary Judgment.[1]  Dkt. 17.  Having considered the parties' submissions, the law, and arguments of counsel at a hearing on the record in open court on January 22, 2020, the Court recommends that Defendant's motion be **GRANTED in part and DENIED in part**.

## I.    <u>Background</u>

J.B., by next friends Kimberly Beason and Scott Beason, filed this lawsuit against Klein ISD pursuant to Title IX seeking compensation for sexual harassment. J.B. attended Northampton Elementary School in Klein ISD from kindergarten through fifth grade and Hildebrandt Middle School in Klein ISD for sixth through eighth grade.  Dkt. 18 at 3, 12, 36.  She alleges that she was sexually harassed from

---

[1] The District Court referred this matter to this Magistrate Judge for report and recommendation. Dkt. 22.

third grade until she withdrew from Klein ISD near the end of eighth grade. Klein ISD has moved for summary judgment on the grounds that J.B. cannot meet her burden to create a genuine issue of material fact as to each element of a Title IX cause of action.[2] Additional facts are set forth in the analysis below.

## II.   <u>Legal Standards</u>

### A. Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002). The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013).

---

[2] Defendant objects to certain evidence cited in Plaintiffs' Response. Dkt. 25. Because none of the requested evidentiary rulings would impact the Court's recommendation on the motion for summary judgment, the Court declines to rule on the admissibility of evidence at this stage.

## B. Title IX Legal Standards

Title IX provides, with certain exceptions not at issue here, as follows:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).  A private cause of action for damages exists under Title IX for student-on-student sexual harassment.  *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 638, (1999).  The Supreme Court held in *Davis* as follows:

[F]unding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

*Id.* at 650.  Based on *Davis*, the Fifth Circuit in *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 165 (5th Cir. 2011) set forth five elements required to prove a Title IX peer sexual harassment claim against a school district: (1) the school district had actual knowledge of the harassment; (2) the harasser was under the district's control; (3) the harassment was based on the victim's sex; (4) the harassment was so severe, pervasive, and objectively unreasonable that it effectively barred the victim's access to an educational opportunity or benefit; and (5) the district was deliberately indifferent to the harassment.  *See also I.F. v. Lewisville*

*Indep. Sch. Dist.*, 915 F.3d 360, 368 (5th Cir. 2019) (listing the above five elements of a claim for peer-on-peer sexual harassment under Title IX).

### 1. The school district may be liable only for conduct of which it had actual knowledge.

The Supreme Court held in *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274, 290 (1998) that a school district is only liable under Title IX if an appropriate person had actual knowledge of the alleged harassment.  As explained in *Gerber*:

> [A] damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails to adequately respond.

*Id.*[3]  *See also Herndon v. Coll. of Mainland*, No. CIV.A.G-06-0286, 2009 WL 367500, at *16 (S.D. Tex. Feb. 13, 2009) ("[A] school official must at least serve in a position with the authority to 'repudiate that conduct and eliminate the hostile environment' on behalf of the school district.  *Rosa H. v. San Elizaro Indep. Sch. Dist.*, 106 F.3d 648, 661 (5th Cir.1997).").  Moreover, the school district must have actual knowledge of the sexual harassment itself, not other bullying or teasing.  *Lansberry v. Altoona Area School Dist.*, 318 F. Supp. 3d 739, 751 (W.D. Penn. 2018).

---

[3] The term "recipient" refers to the recipient of federal funds that is covered by Title IX, here the school district.

### 2.  The harasser must be under the school district's control.

Actionable harassment must occur under the operations of a funding recipient and must take place in a context subject to the school district's control.  *Davis*, 526 U.S. at 645.  Misconduct by a student that occurs during school hours and on school grounds takes place under the operations of the funding recipient and satisfies this requirement.  *Id.* at 646.

### 3.  The harassment must be based on the victim's sex.

Title IX is clear that the harassment must be *on the basis of sex*.  20 U.S.C. § 1681(a) (emphasis added).  Harassment is not actionable if it is "merely tinged with offensive sexual connotations," or is based on personal animus or other reasons. *Reed v. Kerens Independent School District*, 2017 WL 2463275 at *9-10 (N.D. Tex. 2017).  The use of language generally associated with the female gender does not always indicate that taunts and name-calling are based on the victim's gender.  *See Burwell v. Pekin Cmty. High Sch. Dist. 303*, 213 F. Supp. 2d 917, 931 (C.D. Ill. 2002) ("the use of terms such as 'bitch,' 'whore,' and 'slut' at school are not necessarily based upon gender bias but may be based on personal animosity unrelated to gender.").

### 4.  The harassment must be severe, pervasive, and objectively unreasonable and deny the victim access to educational opportunity.

Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target

differences in gender. Rather in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect.

*Davis*, at 652.  "Whether conduct rises to the level of actionable harassment 'depends on a constellation of surrounding circumstances, expectations, and relationships, including but not limited to, the ages of the harasser and the victim and the number of individuals involved." *Sanches*, 647 F.3d at 167 (quoting *Davis*, 526 U.S. at 651).

### 5. The school district must have been deliberately indifferent to the harassment.

Title IX liability turns on the school district's response to actionable conduct. A school district will be liable only when its response is so deficient that is rises to the level of deliberate indifference.  Deliberate indifference requires proof that the school district's response to known peer sexual harassment was "clearly unreasonable."  *Davis*, 526 U.S. at 649; *Sanches*, 647 F.3d at 167.  This is a very high standard.  *Davis*, 526 U.S. at 643; *I.F.*, 5th Cir. at 368.

## III.   Analysis

On summary judgment, the Court must consider all the evidence in the light most favorable to the non-moving party and may not weigh the evidence or make any credibility determination. *Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194, 199 (5th Cir. 2019).  Therefore, the Court must consider all the factual allegations contained

in the summary judgment record in deciding whether genuine issues of material fact preclude summary judgment.

J.B.'s litany of allegations spans several years and two different schools. Analysis of whether J.B. can meet her summary judgment burden on each element of her Title IX sexual harassment claim is best broken into two sections:   The Elementary Years and The Middle School Years.

## A. The Elementary Years

Defendant argues that J.B. cannot meet her burden to create a genuine issue of material fact on required elements of her Title IX claim as it relates to elementary school, specifically:   (1) whether J.B. was the victim of severe and pervasive harassment based on her sex; and (3) whether the school district was deliberately indifferent to J.B.'s sexual harassment.

Defendant's motion incorporates the following statement that J.B. prepared in 2017 for purposes of litigation:

> My name is [J.B.].  I am fourteen years old and a freshman in high school. I have a difficult time talking to people so I thought writing my story would be a better way to tell you my story. I was a student at KISD from Kindergarten to eighth grade.
> I was in third grade when a boy named [C.E.] and his friends decided they didn't like me and started to bully me. They called me ugly, short and told kids on the playground not to play with me. He pushed me off the monkey bars and slammed my head against a pole on the way to PE class. My parents told me to tell the teacher and that she would make him stop. They also said try and be nice to him. He must be having a hard time at home if he acted this way. I did all of those things and

nothing worked. The teacher didn't help and no matter how nice I was he just continued his behavior.

In fourth grade it was worse. He and his two friends would call me a fat, stupid, ugly, b word almost daily. I had two friends in our class and he would bully them too. Eventually one of them went over to his side. He would tell her to call me names. Then she would come to me and apologize and wanted to be friends again. This happened over and over as the year went on. One of my friends was a boy he lives on my street and we have known each other since we were three. [C.E.] and his friends would say he was only my friend because we had sex and that we were doing it. I had no idea what that meant, I went home and asked my mom what he thought we were doing and why he said that. Eventually even that friend stayed away from me. I cried almost every day. When the boys saw me start to cry, they would high five each other and laugh. I didn't want to eat. I thought if I lost weight maybe they would stop calling me fat. I was communicating all of this to my parents and they were talking to the principals, both of my teachers and the school counselor. I went in and spoke with the counselor myself on more than one occasion. Nothing helped, no one at the school helped. On the last day of school my father told the principal that he wanted [C.E.] nowhere near me in fifth grade.

In fifth grade I was in Mrs Schweitzer's class. Most of the kids in that class were ESL. I am a blonde hair blued eyed girl so I stuck out like a sore thumb in that class. I was very different and had a hard time making friends. The teacher tried hard to keep [C.E.] away from me, but he still managed to find me on the playground, lunch room or hallway. Eventually I decided to find a place near the teachers at recess to sit so I felt safe and that he couldn't get to me. One day as I was walking out of school to meet my dad he came up behind me and pushed me down. I asked him why he hated me, why was he calling me a fat, stupid, b-word all the time. He said it wasn't just me that he thought were those things, he thought Me, my mom and all women were. My knee was bleeding and when I got to the car my dad walked in and spoke to the principal. My parents called Klein police and we told them what had been happening.[4] When I went back to school nothing had changed. They still came after me anytime they could. In my head I was

---

[4] There is no evidence police were called to the school.  J.B. may be referring to an incident that occurred outside of school at a swim meet.  *See* Dkt. 18 at 11-12, 67.

a fat, stupid, ugly bi*** and no one at the school cared what they did.
They were letting it happen and did nothing to stop it[.]

Dkt. 17 at 13-14; Dkt. 18 at 11-12.

### 1.   J.B.'s harassment during elementary school was not based sex, nor was it severe and pervasive.

J.B.'s counsel conceded on the record at the hearing that the bullying and teasing J.B. experienced in third grade was not sexual in nature. However, it is J.B.'s contention that what began as bullying morphed into sex-based harassment at some point during J.B.'s fourth grade year and the school was deliberately indifferent to her plight. The evidence does not support her contentions.

The record does not show that J.B. was harassed at any time during elementary school on the basis of her sex as required to prove a Title IX sexual harassment claim. J.B. testified that C.E. and his friends "decided they didn't like me" and she does not know why. Dkt. 18 at 4 ("I don't know why [C.E.] came after me, but he just did."); *Id.* at 10 (other kids said "I deserved it" because C.E. "didn't like me."). The law is clear that bullying and name-calling based on personal animus is not sexual harassment for purposes of Title IX. There must be some basis on which a reasonable jury can infer that the harassment was based on sex. For example, in *Davis*, the Fifth Circuit found plaintiff's complaint stated a claim for sexual harassment because it alleged not only repeated acts of verbal harassment over a 5-month period but also numerous acts of objectively offensive touching, and the

perpetrator pleaded guilty to criminal sexual misconduct for his acts.  526 U.S. at

653.  In *Carmichael v. Galbraith*, 574 F. App'x 286, 290 (5th Cir. 2014), the Fifth

Circuit held that evidence of numerous acts of offensive touching, including the

removal of the victim's underwear without consent, could satisfy the "based on sex"

element of a Title IX harassment claim.  In *Estate of Brown v. Ogletree*, Civil Action

No. 11-cv-1491, 2012 WL 591190, at *16-17 (S.D. Tex. Feb. 21, 2012), the district

court found that the conduct of simulating anal intercourse, calling out "Hey faggot,

quit trying to f[***] me," using slurs such as gay, faggot, queer, bitch and

f[***]head, insinuating that the victim had AIDS, and teasing for perceived

effeminate appearance were overtly sexual or involved sexual innuendo and were

adequate to state a claim that the plaintiff's harassment was based on sex.  In

contrast, the conduct described by J.B. during elementary school "is more properly

described as teasing or bullying than sexual harassment."  *Sanches*, 647 F.3d at 165-

66.

  The only allegation tying C.E.'s bullying to J.B.'s sex is his alleged comment

that all women are fat, stupid, bitches.  Even if this comment could be characterized

as sexual, this single comment falls far short of the type of conduct that meets the

legal standard of sex-based severe, pervasive, and objectively offensive conduct

necessary to support a Title IX claim.  *See Sanches*, 647 F.3d at 167 (gathering cases

describing conduct that is severe, pervasive, and objectively offensive.); *see also*

*Watkins v. La Marque,* 308 F. App'x 781, 783 (5th Cir. 2009) ("[B]ecause an act could be characterized as sexual harassment does not mean that it automatically rises to a level of severity that deprives a student of access to educational services."). Compare, for example, the facts in *I.F. v. Lewisville*, in which the Fifth Circuit determined that the evidence created a genuine issue of material fact as to whether the harassment I.F. endured was severe, pervasive, and objectively unreasonable:

> [I.F.'s] classmates called her a "whore" and a "slut." They spread rumors about her, talked about her loudly in her presence, and excluded her during cheerleading. One student asked her the race of the baby she would be having. Others asked whether she had sex with multiple people and "how did it feel to be f[***]ed in every single hole of your body?" A.V., one of the students I.F. asserts raped her [at a non-school sanctioned event], "wore the pants that he raped [I.F.] in to school, which had [her] blood on them from intercourse, and stood on the lunch table and said, these are the pants that I took [I.F.'s] virginity in." Multiple football players called her a liar and told her that she was "going to ruin everything." The harassment continued online, with students commenting about I.F.'s alleged assault on Twitter and Instagram. As a result of the harassment, I.F. felt suicidal and depressed, began cutting herself, had nightmares, and experienced panic attacks.

915 F.3d at 373.

J.B.'s counsel conceded at the hearing that the Court can consider only sex-based harassment, not other incidents of bullying and teasing, in determining whether J.B. can show severe and pervasive harassment. *See Lansberry*, 318 F. Supp. 3d at 751; *Wilson v. Beaumont Indep. Sch. Dist.*, 144 F. Supp. 2d 690, 694 (E.D. Tex. 2001) (evidence of prior bullying and teasing did not make single incident

of gender-related harassment severe and pervasive).  At the same time, J.B.'s counsel argued that C.E.'s comment that all women are fat, stupid, bitches evidences his state of mind and shows he harassed J.B. because she is female.  However, J.B. has cited no authority for the argument that C.E.'s single comment establishes a state of mind that transforms all of C.E.'s conduct into harassment based on sex. The Court concludes that J.B. cannot meet her summary judgment burden to show actionable sex-based harassment in elementary school.

### 2. The school district was not deliberately indifferent.

In addition, the record does not support a finding that the school district was deliberately indifferent to J.B.'s alleged harassment in elementary school.  J.B.'s teachers, by Plaintiffs' own characterizations, were responsive and supportive.  In April 2013, J.B.'s fourth grade teacher, Elizabeth Mikelson, sent Kimberly Beason an email stating that J.B. was very upset because J.B. felt other students were bullying her.  Mikelson stated that she did not witness any bullying, but "I am trying to prevent this just not sure what else to do."  Dkt. 18-1 at 2.  Beason responded by describing a history of problems between J.B. and other children, describing J.B. as "uber sensitive" and explaining that she "want[s] to make J.B. stronger and not so sensitive."  Beason concluded the email "Thanks again. I appreciate you."  *Id.*

In mid-April 2013, the school conducted an investigation into J.B.'s allegations of bullying.  Dkt. 18-1 at 41-46.  The principal interviewed all the

relevant parties, including the children J.B. identified as her bullies.  On April 19, 2013, the school issued a report indicating that there was no evidence of sex-based harassment and that it was a "back and forth thing" between J.B. and the other children.  *Id.* at 41.  The school counselor met with all the children, and the alleged bullies were told to stay away from J.B.  *Id.*

At the end of fourth grade, J.B.'s father requested that J.B. and C.E. be in separate classes the following year.  Dkt. 18 at 55.  The school complied and placed J.B. in an ESL class, without C.E. or the other accused bullies, for fifth grade.  *Id.*; Dkt. 18-1 at 11.  J.B.'s fifth grade teacher, Sherry Schweitzer, implemented measures to keep C.E. away from J.B.  Dkt. 18 at 56; Dkt. 18-1 at 11.  Despite Ms. Schweizer's efforts, there were a few incidents when C.E. harassed her in the hallways and at lunch.  *Id.*  When J.B.'s mother informed Schweitzer that C.E. had tripped J.B. walking out of school one afternoon, Schweitzer talked to J.B. and made sure that teachers walked J.B. out first during dismissal.  Dkt. 18-1 at 4.  J.B.'s mother thanked Schweitzer for being "so much more than a teacher" and "a great mentor to [J.B.]"  *Id.*

While the elementary school's efforts may not have been entirely successful in preventing all bullying, the efforts were not clearly unreasonable under the known circumstances. *Vance v. Spencer Cty. Pub. School Dist.*, 231 F.3d 253 (6th Cir. 2000)*, relied upon by Plaintiffs, does not support a contrary finding.  In *Vance*, the evidence

showed that the school was aware that severe sexual harassment of the victim continued, and actually increased, despite prior remedial measures. *Id.* at 262. Despite new knowledge of increased harassment, the principal did nothing to avoid new liability based on new severe and pervasive sexual harassment. *Id.* Here, although the harassment did not entirely cease, there is no evidence that the class separation combined with Ms. Sweitzer's diligent efforts were entirely unsuccessful. Kimberly Beason testified that Ms. Sweitzer "tried really hard" and there were only "a few incidents" in fifth grade. Dkt. 18 at 56. The Court finds as a matter of law that the school's response to J.B.'s complaints in elementary school was not clearly unreasonable under the known circumstances, particularly given the age of the children and the fact that no one, including J.B.'s parents, had characterized the behavior as sexual harassment in elementary school. Defendant is entitled to summary judgment on J.B.'s Title IX sexual harassment claim as it relates to her elementary school years.

## B. The Middle School Years

As with the elementary years, Defendant argues that J.B. cannot meet her burden to create a genuine issue of material fact as to whether she was the victim of severe and pervasive harassment based on her sex of which the school district had actual knowledge and yet remained deliberately indifferent. However, the evidence

regarding the middle school years presents a more complicated case than the elementary years.

J.B.'s prepared statement, cited in part in Section A above, continues as follows:

> When I started middle school I was told by the counselor that it was a big school and I would not really see him. They were wrong. He would yell names out at me as I walked down the halls, at lunch and tried to push me down the stairs more than once. He was not in my classes, but he still managed to find me. I was called an ugly fat freak, a weirdo, big boobs, no rear (but that is not the word he used) a tattle tale, a fat bi*** (he like that one) and any demeaning names and descriptions than I care to remember. They were always about my weight, my looks, my body, whatever he could say to hurt me. I tried out for school cheer, my parents thought it would help my confidence. I made the team, but he showed up at games and sat behind me if I was in the bleachers or right in front of where we were cheering if a game was going on. He would make faces or lewd gestures with his hands or whisper mean or inappropriate things if he was close enough. Three counselors, three principals and my cheer sponsors knew our history, but none of them kept him [a]way. In eighth grade I started to have pains in my stomach. This made it hard to go to school. My grades dropped and I was sick a lot. After a lot of tests we found out it was related to stress and anxiety. I did not feel safe at Hildebrandt. I had no friends and was treated like a leper . . ..

Dkt. 17 at 13-14; Dkt. 18 at 11-12.

In her deposition, J.B. alleged additional acts of harassment by C.E. and other boys in middle school.  She testified that during middle school C.E. or other unnamed boys called her names in the hallway, tried to push her down the stairs, threw her lunch and library books in the garbage, and propositioned her for sex in the cafeteria two or three times.  Dkt. 18 at 12-14, 21.  J.B. told the lunch monitors

and the principal about the lunch time incidents "since they were on the stage" and monitored the students at lunch. Dkt. 18 at 13. J.B. alleges C.E. "constantly berate[d] and insulte[d]" her by calling her fat, stupid, bitch, and shoving her into lockers. *Id.*

J.B. testified that in seventh grade C.E. told her she "was a piece of ass that just needed to be raped." Dkt. 18 at 14-15, 17. J.B. testified that C.E. and others were saying things to her *every day* like she "was a f[***]ing bitch, that [she] deserved to die, that [she] was a whore, and a piece of shit." Dkt. 18 at 15. J.B. alleges she reported this to the assistant principal and told "the teachers that were stationed to watch everything." *Id.* In her deposition, J.B. described C.E.'s "lewd gestures," mentioned in her prepared statement, as using his middle finger to represent a penis and a circle to represent an asshole or vagina. Dkt. 18 at 17. According to J.B., when she was a cheerleader C.E. sat behind her at games and made inappropriate comments and hand gestures. Dkt. 18 at 19. In eighth grade, C.E. made multiple comments to J.B. about her breast size. Dkt. 18 at 21.

J.B.'s allegations of harassment in middle school extend beyond the conduct of C.E. and describe a general culture of sexual harassment. She testified that C.E. and "random boys throughout the school" called her and other girls "a piece of a[**], a pair of tits, things like that. Just sexual comments in general were rather commonplace." *Id.* at 20. J.B. further testified that "comments about my breasts

16

and my waist and whatnot, things like that were commonplace because I was one of the first girls in the grade to develop." *Id.* at 22. "You could go into school any day of the week and see people making comments like that to each other." *Id.* at 26. "[A]ny time we would walk around [we] could hear a crude remark being said" about things such as "the size of a girl's breast or how tight her p[****] would be." *Id.* at 30. J.B. says that a "multitude of [teachers] were in clear earshot" when these comments were made, and she, as well as "girls everywhere" reported the comments. *Id.* On one occasion someone allegedly grabbed J.B.'s buttocks in the hallway and she reported it to the hall monitor. *Id.* at 21-22.

At the start of middle school in 2014, J.B.'s mother sent an email to the middle school counselor, Marcy Wilson, to inform her of J.B.'s history of problems with C.E. Dkt. 18 at 36. The school made sure that C.E. was not in any of J.B.'s classes and teachers and staff monitored the hallways and the cafeteria. *Id.* at 36-37. According to the middle school assistant principal, Lauren Marti, J.B. did not report any problems with bullying or sexual harassment while attending Hildebrandt Middle School. *Id.* at 37. However, J.B. testified that she told Marti that C.E. shoved her into the lockers but Marti simply told her to try to avoid and ignore him. Dkt. 18 at 13-14. J.B. also contends that she complained to Marti that C.E. called her derogatory names and told her she deserved to die. J.B. contends that Marti told her to use earplugs in the hallways so she would not hear him. Dkt. 18 at 15.

Despite the lack of any documented complaints in school records, J.B. testified that she reported these incidents to "all the teachers she could find." Dkt. 18 at 14. The Court emphasizes, again, that it cannot make credibility determinations on summary judgment. Therefore, the Court is constrained by J.B.'s deposition testimony and the law to find that genuine issues of material fact exist as to each element of J.B.'s Title IX claim relating to her middle school years.

### 1. Evidence of severe and pervasive sexual harassment.

J.B.'s deposition testimony about C.E.'s rape comment and lewd gestures, in addition to the constant references by middle school boys to female body parts and sex acts creates a genuine issue of material fact as to whether the incessant harassment J.B. allegedly faced during middle school was based on her sex.

Although C.E. "never touched [J.B.] in any sort of sexual way," (Dkt. 18 at 17, 33), J.B. alleges that she was taunted with vulgar, sexually suggestive comments, *every single day* from sixth grade until she withdrew from school halfway through eighth grade.[5] The Court cannot say that such harassment, if it happened, is not

---

[5] On December 6, 2016, halfway through eighth grade J.B.'s mother informed Marti that someone had J.B.'s hair really hard in the hallway and J.B. heard someone, she thinks a girl, call her a freak. Dkt. 18 at 39. The December 6, 2016 email also reported issues related to cheerleading and references J.B.'s history with C.E. in fourth through sixth grade. *Id.* As requested in the email, Marti reviewed video footage but could not see the incident or identify any students to interview. Dkt. 18 at 39. In addition, the cheerleading sponsor, Tina Eileen James, stated that J.B. had conflicts with other cheerleaders, but that J.B. never reported to her that she was being bullied or sexually harassed by C.E. or any other students. Dkt. 18-1 at 7. Neither the hairpulling incident nor J.B.'s conflicts with other cheerleaders constitutes harassment based on sex, and the Court is not relying on them in finding a fact issue as to severe and pervasive sexual harassment.

severe and pervasive.  It is true that many cases of actionable Title IX harassment involve at least some physical contact.  *See J.A. v. Corpus Christi ISD*, Civil Action No. 2:17-CV-182, 2018 WL 4469861, at *8 (S.D. Tex. Sept. 18, 2018) (criminal sexual assault is not mere name-calling or bullying and is objectively unreasonable). But Defendant has cited no case holding that long-term, frequent, verbal harassment is not severe and pervasive as a matter of law.  Rather, the question of whether sexual harassment is severe and pervasive depends on the "constellation of surrounding circumstances." *Sanches*, 647 F.3d at 167 (quoting *Davis*, 526 U.S. at 651).

It is also true that J.B. has presented no medical evidence demonstrating that the medical conditions that kept her out of school for much of eighth grade and ultimately led to her withdrawal in February 2017 were caused by sexual harassment.  However, there is evidence that J.B. "did not feel safe at Hildebrandt." Dkt. 18 at 12.  In support of her request to the school district for Homebound services for J.B., J.B.'s mother submitted a letter from a licensed professional counselor who was "currently working with J.B. for individual therapy focused on the treatment for significant anxiety and low self-esteem."  Dkt. 18 at 87.  The therapist stated that J.B. "has shared an extensive history of severe bullying and peer rejection experiences, dating from elementary school to her most recent school involvement" and has "expressed feelings of fear and intense anxiety with thoughts of returning to a school environment."  *Id.*  And, J.B.'s mother testified that she decided not to send

J.B. to Klein Oak High School in Klein ISD because the school could not promise it could protect J.B. from C.E.  Dkt. 18 at 67-68.  This evidence raises a fact issue as to whether the sexual harassment J.B. allegedly suffered denied her access to an educational opportunity.

### 2.    Evidence of the school district's actual knowledge and deliberate indifference.

Defendant argued at the hearing and in its Reply[6] that J.B. cannot meet her summary judgment evidentiary burden to show that an "appropriate person" had actual knowledge of the sexual harassment J.B. alleges took place in middle school.

Again, the Court is constrained by the record and finds the existence of a fact issue as to whether actual knowledge can be imputed to the school district in this case.  The Court has found no authority for the proposition that a teacher, or any school employee below the level of an assistant principal, cannot be an "appropriate person" as a matter of law.   Who qualifies as an "appropriate person" is generally a question of fact.  *See Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1247 (10th Cir. 1999) (declining to define appropriate person by job title because school districts vary in organization but noting that *Davis* makes clear that such a person must be a school official with the authority to act to halt known abuse); *Doe*

---

[6] Although Defendant moved for summary judgment on the closely related issue of deliberate indifference, Defendant did not explicitly contest in its summary judgment brief whether J.B. reported the harassment to an appropriate person for purposes of attributing actual knowledge to the school district.

*v. Sch. Brd. Of Broward Cty., Fla.*, 604 F.3d 1248, 1256 (11th Cir. 2010) ("[W]e also note that the ultimate question of who is an appropriate person is necessarily a fact-based inquiry.").  In *Murrell*, the court noted "[i]t is possible that these teachers would also meet the definition of 'appropriate persons' for the purpose of Title IX liability if they exercised control over the harasser and the context in which the harassment occurred."  186 F.3d at 1248; *see also Hawkins v. Sarasota Cty. School Board*, 322 F.3d 1279, 1286 (11th Cir. 2003) ("In order to answer the question [whether notice to a teacher constitutes actual knowledge on the part of a school board] it would be necessary to examine how Florida organizes its public schools, the authority and responsibility granted by law to administrators and teachers, the school district's discrimination policies and procedures, and the facts and circumstances of the particular case.").  In addition, proposed regulations from the Department of Education expressly define an "appropriate person" to include a teacher in the context of student-on-student sexual harassment at the elementary and secondary school level.[7]  Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 83 Fed. Reg. at 61,496 (proposed Nov. 29, 2018).

---

[7] While these proposed regulations do not bind the Court, nor do they create a private right of action, *J.A. v. Corpus Christi ISD*, 2018 WL 4469861, at *8, they support the Court's finding that whether a teacher is an appropriate person is a fact-based determination.

In *Herndon v. College of Mainland*, Civil Action No. G-06-0286, 2009 WL 367500, at *19 (S.D Tex. Feb. 13, 2009), the district court found that the record was sufficient to create a genuine issue of material fact as to whether instructors "exercised substantial control over both the harasser and the context in which the known harassment occur[red]" and therefore summary judgment could not be granted as a matter of law on the grounds that the instructors were not "appropriate persons" under Title IX. The *Herndon* Court cited *Montgomery v. Indep. Sch. Dist. No. 709*, 109 F. Supp. 2d 1081, 1099 (D. Minn. 2000), finding a fact issue as to whether teachers were appropriate persons for purposes of receiving notice under Title IX. The *Montgomery* court emphasized that the school's sexual harassment policy required teachers to report harassment to the school principal, and thus "the teachers had the authority to take at least this minimal corrective measure which, if effectively carried out, would impart knowledge of the harassment to higher School District officials with even greater authority to act." *Herndon*, 2009 WL 367500, at *19 (quoting *Montgomery*, 109 F. Supp. 2d at 1099). Klein ISD also has a sexual harassment policy that requires teachers to report bullying and harassment to the school principal. Dkt. 18-1 at 43, 52, 61. The absence of documented reports of sexual harassment from J.B.'s teachers to the principal of Hildebrandt Middle School is not conclusive evidence that J.B. never in fact complained about sexual harassment, particularly given her deposition testimony that she complained

repeatedly to "all the teachers [she] could find." Dkt. 18 at 14. *See Herndon*, 2009 WL 367500, at \*15 (S.D Tex. Feb. 13, 2009) ("To disregard other parts of the affidavit would require a credibility judgment that is inconsistent with the standards to be applied in deciding summary judgment motions."). Further, J.B. testified that she reported incidents of sexual harassment to Marti, the assistant principal at Hildebrandt. Although Marti denies this in her affidavit submitted in support of summary judgment, the conflicting testimony of J.B. and Marti again presents a credibility question inappropriate for determination on summary judgment.

There is no dispute that the school district never conducted an investigation, took any action in response to J.B.'s sexual harassment complaints, or took any disciplinary action against C.E. or any other student for harassing J.B. during middle school. "Although the bar for avoiding Title IX liability is surprisingly low . . . . [w]hat the School Board may not do is nothing." *Estate of Brown v. Ogletree,* Civil Action No. 4:11-cv-1491, 2012 WL 591190, at \*18 (S.D. Tex. Feb. 21, 2012), *rev'd in part on other grounds*, 863 F. Supp. 2d 632 (S.D. Tex. 2012). The school district contends the lack of investigation or disciplinary actions resulted from its lack of actual knowledge, while Plaintiffs contend the absence of action evidences deliberate indifference. Whether the school district was deliberately indifferent will hinge on whether the jury finds J.B.'s testimony regarding her daily complaints of harassment to be credible — a determination this Court cannot make. Thus, fact

issues exist as to whether an "appropriate person" had actual knowledge of the harassment, and whether the school district was deliberately indifferent.

## IV.   Conclusion

For all of the reasons discussed above, the Court **RECOMMENDS** that Defendant's motion be **GRANTED in part** to the extent J.B. claims sexual harassment in elementary school and **DENIED in part** to the extent J.B. claims sexual harassment in middle school.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on February 18, 2020, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge